**SO ORDERED.**

**SIGNED this 26 day of July, 2013.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

LISA GAIL SKUMPIJA,

    DEBTOR.

CASE NO. 11–00338–8–SWH
CHAPTER 7

---

DAVID W. WARREN, CHAPTER 7
TRUSTEE,

    PLAINTIFF,

    v.

JANET ABREU AND KATHIE L. RUSSELL,

    DEFENDANTS.

ADVERSARY PROCEEDING NO.
11–00072–8–SWH

**ORDER ALLOWING SUMMARY JUDGMENT IN FAVOR OF CHAPTER 7 TRUSTEE**

    David W. Warren ("trustee") initiated this adversary proceeding on February 25, 2011. The multi–count complaint, subsequently amended on July 13, 2011 and April 25, 2012,[1] seeks avoidance

---

[1] The complaint initiating this adversary proceeding also named the substitute trustee under the deed of trust, Kathie L. Russell ("Russell"), as a defendant. After failing to answer or otherwise respond to the complaint, default was entered against Russell on March 8, 2013, pursuant to Fed. R. Civ. P. 55 and Fed. R. Bankr. P. 7055.

of a deed of trust executed by Lisa Gail Skumpija ("debtor") in favor of her mother, Janet Abreu ("defendant"), pursuant to §§ 544, 548(a)(1)(B), 550 and 551 of the Bankruptcy Code.[2] The defendant filed a response opposing the relief requested in the trustee's complaint. The trial of this adversary proceeding was scheduled for June 4, 2013, in Raleigh, North Carolina. For reasons of efficiency and judicial economy, the court informed the parties that it would determine whether the trustee was entitled to summary judgment against the defendant pursuant to his strong–arm powers under § 544(a) prior to hearing evidence relating to his remaining causes of action under § 548. Following the hearing on June 4, 2013 and in accordance with the deadline established by the court, both parties submitted memoranda of law outlining their respective positions. Based on the foregoing, the court concludes that the trustee is entitled to summary judgment against the defendant with respect to his claim for relief asserted under § 544(a).

## BACKGROUND

The debtor filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code on January 14, 2011. Prepetition and on June 10, 2008, the debtor acquired real property located at 575 Chapel Ridge Drive, Pittsboro, North Carolina (hereinafter "Chapel Ridge Property") from her brother, Jed Schipper. Two days later on June 12, 2008, the debtor executed a promissory note, which was made payable to the defendant in the original principal amount of $500,000.00 ("promissory note"). The promissory note, which designates the debtor as the "Maker" and the defendant as the "Payee," provides that the principal is due and payable as follows: $200,000.00 upon the sale of the Chapel Ridge Property and $300,000.00 upon sale of real property located at

---

[2] All section references, unless otherwise indicated, are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

151 Hawfields Drive, Pittsboro, NC 27312 ("Hawfields Property"). It also states that "[t]his Note is given to secure the purchase of real property located at 575 Chapel Ridge Drive, Pittsboro NC 27312 and is secured by a Deed of Trust."

After execution and registration of a separate promissory note and deed of trust in favor of Branch Banking and Trust Company ("BB&T"),[3] the debtor and her husband, Nelu Skumpija ("Mr. Skumpija"), executed two deeds of trust, both dated September 15, 2009, to secure the promissory note previously executed in favor of the defendant. The first deed of trust, which purports to encumber the Chapel Ridge Property, provides in pertinent part:

> WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of Two Hundred Thousand—Dollars ($200,000**), as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference. The final due date for payments of said Promissory Note, if not sooner paid, is September 15, 2019.

("Chapel Ridge Deed of Trust"). The second deed of trust granted the defendant a lien encumbering the Hawfields Property ("Hawfields Deed of Trust"). The Hawfields Deed of Trust, which contains provisions very similar to those in the Chapel Ridge Deed of Trust, provides:

> WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of Two Hundred Fifty Thousand—Dollars ($250,000**), as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference. The final due date for payments of said Promissory Note, if not sooner paid, is September 15, 2019.

Both the deeds of trust designate the "Grantor" as "Lisa Skumpija and husband, Nelu Skumpija" and the "Beneficiary" as the defendant, "Janet Abreu."

---

[3] On June 26, 2008, the debtor executed a promissory note made payable to BB&T in the original principal amount of $339,250.00. As security for this promissory note, the debtor and Mr. Skumpija executed a deed of trust on the Chapel Ridge Property in favor of BB&T. This deed of trust was recorded in the Chatham County Register of Deeds on July 1, 2008.

3

The Chapel Ridge Deed of Trust and Hawfields Deed of Trust were registered with the Chatham County Register of Deeds on September 16, 2009 and September 25, 2009, respectively. Both deeds of trust were properly registered with Chatham County Register of Deeds and appear in each respective parcel's chain of title.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, summary judgment may be allowed "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment[] . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, all conflicts are resolved by viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When ruling on a motion for summary judgement, the trial court has an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

**DISCUSSION**

The trustee's complaint, as amended, seeks avoidance of the Chapel Ridge Deed of Trust pursuant to his powers under the strong–arm clause of § 544(a).[4] Specifically, the trustee argues that § 544(a) permits avoidance of the Chapel Ridge Deed of Trust because it fails to properly identify the promissory note and is therefore invalid under North Carolina law. See, e.g., Willows II, LLC, v. Branch Banking and Trust Co. (In re Willows II, LLC), 485 B.R. 528 (Bankr. E.D.N.C. 2013) (detailing the requirement, under North Carolina law, that a deed of trust must properly identify the obligation secured).

Section 544, outlining the instances where state law allows a trustee to utilize his avoidance powers, provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> >
> > (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be

---

[4] The trustee submitted into evidence a standard form, as set out in N.C. Gen. Stat. § 45–36.11, showing that the Hawfields Deed of Trust was satisfied in full on April 22, 2013. The satisfaction was subsequently recorded with the Chatham County Register of Deeds on April 26, 2013.

> perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> (b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
>
> . . . .

11 U.S.C. § 544.

The distinction between the trustee's rights under § 544(a)(1) and § 544(a)(3) is critical. Section 544(a)(1) grants a trustee "the status of a judicial lien creditor on all property as of the date of the petition." Meade v. Bank of Am. (In re Meade), Adv. No. 10–00280, 2011 WL 5909398, at *2 (Bankr. E.D.N.C. July 29, 2011) (citing 11 U.S.C. § 544(a)(1)) (hereinafter "Meade I"), aff'd, Bank of Am. v. Meade, No. 5:11–CV–501–FL (E.D.N.C. July 9, 2012) (hereinafter "Meade II"). Utilizing North Carolina law to determine the rights and relative priority of a hypothetical judicial lien creditor, the trustee may avoid any competing interest it would have priority over as of the petition date. Id. On the other hand, § 544(a)(3) places the trustee in the position of a bona fide purchaser and, "as such, the trustee may avoid a claim against the debtor's estate if a bona fide purchaser would have defeated the claim." Butler v. Deutsche Bank Trust Co. (In re Rose), Adv. No. 08–00080, 2009 WL 2226658, at *2 (Bankr. E.D.N.C. July 20, 2009) (recognizing that "if notice existed which would have alerted a potential bona fide purchaser to an error in the deed of trust, then the trustee is prohibited from taking free and clear of liens." (citing Kirkhart v. Boardwalk Dev. Co. (In re Boardwalk Dev. Co.), 72 B.R. 152, 155 (Bankr. E.D.N.C. 1987)), aff'd, No. 7:09–CV–00145-FL (E.D.N.C. Feb. 9, 2010), aff'd per curiam, 418 F. App'x 244 (4th Cir. Feb. 15,

2011) (unpublished); In re Hartman Paving, Inc., 745 F.2d 307, 309 (4th Cir. 1984). In Hartman Paving, the Fourth Circuit held that actual knowledge of a defect in a deed of trust prevents a debtor–in–possession from qualifying as a bona fide purchaser under § 544(a)(3). 754 F.2d at 309.

Whether the purported lien created by the Chapel Ridge Deed of Trust is invalid and avoidable by the trustee pursuant to § 544(a)(1) or § 544 (a)(3) is governed by North Carolina law. See SunTrust Bank, N.A., v. Macky (In re McCormick), 669 F.3d 177, 180–81 (4th Cir. 2012) (emphasizing that North Carolina law determines whether a trustee may avoid a lien as a bona fide purchaser pursuant to § 544(a)(3)); Havee v. Belk, 775 F.2d 1209, 1218 (4th Cir. 1985) (stating that § 544(a)(1) "gives the Trustee the status of a hypothetical lien creditor . . . but, while it is the federal law which provides the trustee with his 'strong–arm' power, his exercise of such power and its extent are governed entirely by the applicable state law." (citations omitted)).

North Carolina is a pure race jurisdiction and, as a result, "[n]o deed of trust or mortgage of real or personal property . . . shall be valid to pass any property as against lien creditors . . . but from the time of registration thereof . . . ." N.C. Gen. Stat. § 47–20(a). Registration is essential because it allows purchasers and those seeking to encumber real property to rely on the status of the public record. Chrysler Credit Corp. v. Burton, 599 F. Supp. 1313, 1318 (M.D.N.C. 1984); see Angell v. First S. Bank (In re Despaigne), Adv. No. 10–00045, 2011 WL 1135374, at *3 (Bankr. E.D.N.C. Mar. 25, 2011) (recognizing that "[t]he purpose of North Carolina's recording statute is to enable purchasers or encumbrancers to rely with safety on the public record concerning the status of land titles." (citation omitted)). A purchaser is considered on notice of "any fact or circumstance affecting his title which is reasonably disclosed by the instruments in his line of title[,]" Burton, 599 F. Supp. at 1318 (citation and emphasis omitted); but "no notice, however, full and formal, will

7

supply the place of registration." Fifth Third Mortg. Co. v. Miller, 202 N.C. App. 757, 760, 690 S.E.2d 7, 9 (2010) (quoting Lowery v. Wilson, 214 N.C. 800, 804, 200 S.E. 861, 864 (1939)). North Carolina courts have recognized that "[t]he registration of an improperly acknowledged or defectively probated deed imports no constructive notice and the deed will be treated as if unregistered." New Home Bldg. Supply Co. v. Nations, 259 N.C. 681, 687, 131 S.E.2d 425, 429 (1963) (citations omitted); see, e.g., Lowery, 214 N.C. at 804, 200 S.E. 864 (holding that a deed of trust, which contains aN incorrect description of the subject property, is defective and provides no notice, actual or constructive); Cowan v. Dale, 189 N.C. 684, 684–85, 128 S.E. 155, 156 (1925) (holding that the registration of a defective deed of trust is ineffective to pass title and "may be regarded a nullity as to subsequent purchasers or [e]ncumbrancers.").

"To be a valid lien on real property, North Carolina law requires a deed of trust to specifically identify the obligation it secures." In re Hall, 210 N.C. App. 409, 413, 708 S.E.2d 174, 177 (2011) (citations omitted); Beaman v. Head (In re Head Grading, Co.), 353 B.R. 122, 123 (Bankr. E.D.N.C. 2006) ("North Carolina law requires deeds of trust to specifically identify the debt referenced therein."); Walston v. Twitford, 248 N.C. 691, 693, 105 S.E.2d 62, 64 (1958) ("[I]t is necessary for the mortgage to identify the obligation secured."). Although a deed of trust must specifically identify the obligation it purports to secure, there are "no specific requirements as to what must be included to properly identify the debt." Tobacco Square, LLC v. Putnam Cnty. Bank (In re Tobacco Square, LLC), Adv. No. 12–06046, 2013 WL 1246794, at *3 (Bankr. M.D.N.C. Mar. 26, 2013) (emphasizing "that . . . the information included in or omitted from a deed of trust is fatal to the validity of the instrument where it is incorrect and/or misleading."(citations omitted); see Beckhart v. Nationwide Tr. Servs., Inc., No. 7:11–CV–231, 2012 WL 3648105, at *4 (E.D.N.C.

Aug. 21, 2012) (stating that "North Carolina law does not require a deed of trust to use any particular piece of information to identify the underlying debt." (citations omitted); Oliver v. Smith (In re Williams), Adv. No. 09–07968, 2010 WL 1440892, at *l–3 (Bankr. E.D.N.C. Apr. 9, 2010) (validating a deed of trust that failed to identify the date of the underlying obligation because it provided "the proper lender information; the correct amount of money lent pursuant to the Note; the same date the last payment is due under the Note; the signature of the same person on both the Note and the Deed of Trust; and the same reference to a minimum interest rate, maximum percentage amount the interest rate can increase at one time, and the maximum deviation that the interest rate can change from the initial interest rate"); accord Harper v. Edwards, 115 N.C. 246, 246, 20 S.E. 392, 392 (1894) ("Literal exactness in describing the indebtedness is not required. It is sufficient if the description be correct so far as it goes, and full enough to direct attention to the sources of correct and full information in regard to it, and the language used is not liable to deceive or mislead as to the nature or amount of it.").

      This court, in Willows II, conducted an extensive survey of North Carolina law as it pertains to what constitutes a proper and sufficient description of an obligation secured by a deed of trust. 485 B.R. at 535–37. A deed of trust identifies an underlying obligation where it "contains sufficient information that specifically and uniquely identif[ies] . . . the obligation secured." Id. at 537; see Beckhart, 2012 WL 3648105, at *4 (stating that this fact–specific inquiry requires courts to determine "whether the identifying information contained in the deed of trust (whatever that information may be) specifically identifies the underlying debt and is consistent with the underlying debt."). This court further explained that a description of the obligation purportedly secured by a deed of trust must be "sufficient to put subsequent purchasers and creditors on notice of the nature

9

and amount of the obligation secured." Willows II, 485 B.R. at 537.[5] The court determined that the deed of trust in Willows II, which was properly recorded and appeared in the chain of title, provided subsequent purchasers and lenders with the following information: (1) the amount of the obligation; (2) the loan number, the commitment letter and the variable interest rate associated with the obligation; (3) the real property secured by the deed of trust and the identities of relevant parties to the transaction, including the lender, the grantor, the grantee and the beneficiary under the deed of trust; and (4) that any future advances made thereunder may be secured by the collateral. Id. at 537 ("With this information . . . no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation.").

As previously explained, numerous inconsistencies exist between the Chapel Ridge Deed of Trust and the promissory note it purports to secure; as a result, the deed of trust is invalid for failing to sufficiently describe or identify the obligation secured. See In re Enderle, 110 N.C. App. 773, 775, 431 S.E.2d 549, 550 (1993) ("Simply put, because the deed of trust did not properly 'identify the obligation secured,' it is invalid." (citation omitted)). The Chapel Ridge Deed of Trust

---

[5] In reaching this conclusion, this court recognized three separate rationales for requiring specific identification of the obligation secured by a deed of trust:

> First, . . . the mortgage must be "sufficient to put subsequent purchasers upon inquiry and to charge them with notice." This entails a determination as to whether the mortgage language would in any way "deceive or mislead" those examining the record as to "the nature or amount of" the obligation secured by the mortgage. Second, the mortgage must also be confined to the obligations intended to be secured by the parties to the mortgage agreement. These two underlying requirements should be taken into consideration when deciding whether a mortgage properly identifies the obligation secured. Finally, . . . concerns for the possibility of "fraudulent substitution" of "fictitious debts" should also influence the analysis.

Willows II, 485 B.R. at 536–37.

is distinguishable from the deed of trusts that were declared valid in Beckhart, Tobacco Square, Willows II, Williams and Hall because it fails to properly describe or identify, either directly or indirectly, the promissory note. As a result, it does not place subsequent purchasers and creditors on notice of the nature, extent and amount of obligation secured by the Chapel Ridge Property. See, e.g., Beckhart, 2012 WL 3648105, at *4 (recognizing that "the missing date in the Deed of Trust is consistent with, rather than an inadequate or misleading identification of, the Promissory Note, and . . . . the Deed of Trust's reference . . . to the principal amount, payment structure, final payment due date, MIN, and LN of the underlying debt the Deed of Trust purports to secure is entirely consistent with the Promissory Note." (internal citations omitted)); Tobacco Square, 2013 WL 1246794, at *4 (holding that a deed of trust sufficiently described the underlying obligation where it listed the parties, the amount of the loan and the debt and nothing is inconsistent between the promissory note and the deed of trust because "the parties, the amount of the loan, the date, and the variable [interest] rate are all the same."); Willows II, 485 B.R. at 537; Williams, 2010 WL 1440892, at *1–2 (declaring a deed of trust valid, which omitted the date the promissory note was executed, where it listed the amount of the debt, interest rate and other terms that were consistent with the promissory note); Hall, 210 N.C. App. at 413, 708 S.E.2d at 177 (validating a deed of trust that properly identified amount of the obligation secured, parties to the promissory note and the date the underlying debt was incurred); Easthaven Marina Grp., LLC v. B&M Holdings (In re Easthaven Marina Grp., LLC), Adv. No. 08–00221, 2009 WL 703383, at *2 (recognizing that Enderle and Putnam "support the theory that a deed of trust containing a name different from that on the note it purports to secure is invalid.").

The description of the underlying obligation provided by Chapel Ridge Deed of Trust is inconsistent with and differs from the promissory note it purports to secure. See Enderle, 110 N.C. App. at 774–75, 431 S.E.2d at 550 (invalidating a deed of trust because its description was inconsistent with the terms of the underlying promissory note it purportedly secured); Head Grading, 353 B.R. at 123–24; Easthaven Marina Group, 2009 WL 703383, at *2 (declaring that a deed of trust, which secures a promissory note that is misdated and misnamed, invalid). In the instant case, the promissory note evidences an indebtedness of $500,000.00, but the Chapel Ridge Deed of Trust refers to a promissory note in the amount of $200,000.00 and the Hawfields Deed of Trust references an indebtedness of $250,000.00. The Chapel Ridge Deed of Trust lists both the debtor and Mr. Skumpija as grantors, who are indebted to the defendant pursuant to "a Promissory Note of even date herewith[;]" however, the debtor is the sole obligor indebted to the defendant under the promissory note. According to the Chapel Ridge Deed of Trust, the final payment due on the obligation described is September 15, 2019; however, the promissory note became due and payable once each respective parcel was sold. Accordingly, the Chapel Ridge Deed of Trust is invalid because the description of the underlying obligation is inaccurate, misleading and not sufficient to put a subsequent purchaser or encumbrancer on notice as to the nature, amount and extent of the promissory note.

Understandably, the defendant concedes that the Chapel Ridge Deed of Trust fails to properly identify the promissory note as the underlying obligation and, absent reformation, would be invalid. The defendant, however, argues that North Carolina law permits reformation of the Chapel Ridge Deed of Trust to comply with the requirement that it properly identify the promissory note as the obligation secured. The defendant submitted two affidavits in support of reformation,

one from herself and the other from the debtor. Collectively, these affidavits allege that the Chapel Ridge Deed of Trust failed to manifest the parties' intent, which was that each deed of trust secure a portion of the $500,000.00 owed to the defendant under the promissory note.[6] The issue, therefore, is whether the reformation contemplated by the defendant is permitted under North Carolina law. Absent reformation, the Chapel Ridge Deed of Trust and the defendant's lien arising therefrom would be invalid and subject to avoidance by the trustee.   See Putnam v. Ferguson, 130 N.C. App. 95, 98, 502 S.E.2d 386, 388 (1998) ("Since the deed of trust is invalid, plaintiff does not have a valid lien.").

Under North Carolina law, "[r]eformation is a well–established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement." Metro. Prop. & Cas. Ins. Co. v. Dillard, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997). Generally, reformation permits "a court [to] rewrite[] a deed to make it conform to the intention of the parties[,]" In re Law Developers, 404 B.R. 136, 139 (Bankr. E.D.N.C. 2008) (citation omitted); however, the party seeking reformation must demonstrate "that the terms of the instrument do not represent the original understanding of the parties . . . by clear, cogent and

---

[6] Specifically, in their affidavits, the defendant and the debtor assert that the Chapel Ridge Deed of Trust should have read as follows:

> WITNESSETH, That whereas Lisa Skumpija is indebted to Janet Abreu in the principal sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) as evidenced by a promissory note dated June 12, 2008, the terms of which are incorporated herein by reference, and whereas Grantors desire to secure $200,000.00 of that indebtedness pursuant to the terms of this instrument. The Promissory Note is due upon the sale of the 575 Chapel Ridge Drive, Pittsboro, NC, property.

convincing evidence." Hice v. Hi–Mil, Inc., 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981) (citations omitted).

Reformation is not available where an intervening lien creditor, without knowledge of the mistake or deficiency, "'has advanced new consideration or incurred some new liability on the faith of the apparent ownership.'" Law Developers, 404 B.R. at 140 (quoting M&J Fin. Corp. v. Hodges, 230 N.C. 580, 582, 55 S.E.2d 201, 202 (1949)); Meade I, 2011 WL 5909398, at *3. The Bankruptcy Code assumes that the trustee, "acting as a lien creditor, . . . lacks knowledge of the mistake and incurred new liability on the petition date." Meade I, 2011 WL 5909398, at *3 (citations omitted); see, e.g., In re Millerburg, 61 B.R. 125, 128 (Bankr. E.D.N.C. 1986) (emphasizing that unlike § 544(a)(3), notice or knowledge are not factors to be considered when determining whether a party may utilize their strong–arm avoidance powers pursuant to § 544(a)(1)); Law Developers, 404 B.R. at 140 (recognizing that "unlike under Section 544(a)(3), no Fourth Circuit case imputes the debtor's knowledge of the deed of trust to the debtor–in–possession acting as a hypothetical judicial lien creditor pursuant to Section 544(a)(1)."); Den–Mark Constr., Inc. v. Wachovia Bank Nat'l Assoc. (In re Den–Mark Constr., Inc.), 398 B.R. 842, 850–51 (Bankr. E.D.N.C. 2008) (holding that "reformation of the mistaken numerical figures are cut off by the debtor–in–possession as hypothetical judgment lien creditor." ).

Numerous courts in this district have prohibited reformation of an invalid deed of trust when the rights advanced by a trustee or debtor–in–possession as a hypothetical judicial lien creditor or bona fide purchaser intervene under § 544(a)(1). See, e.g., Meade I, 2011 WL 5909398, at *3 (recognizing, under § 544(a)(1), that "no right of reformation exists . . . and the plaintiff can avoid defendant's interest in Lot 978 if the property description in the two deeds of trust is insufficient to

encumber Lot 978."); Law Developers, 404 B.R. at 140 (relying on Millerburg to hold that the debtor–in–possession's status as a hypothetical lien creditor cuts off the creditor's reformation rights as of the petition date); Moore v. OneWest Bank, FSB (In re Moore), Adv. No. 10–00205, 2011 WL 5902622, at *4 (Bankr. E.D.N.C. Sept. 28, 2011) ("Section 544(a)(1) treats the trustee as having extended credit after recording of the defective deed of trust—i.e., at the commencement of the case, prior to the filing of the petition—and the resulting hypothetical judicial lien cuts off a creditor's reformation rights as of the date the petition was filed."); Den–Mark Props. LLC v. SunTrust Bank (In re Den–Mark Props., LLC), No. 08–04084, 2009 WL 917963, at *6 (Bankr. E.D.N.C. Mar. 27, 2009) (holding, pursuant to § 541(a)(1), that a creditor's right to reformation was cut off upon the filing of the debtor's bankruptcy petition).  In Law Developers, the court held that a creditor's right to reform a defective and invalid deed of trust was abolished, as of the petition date, based on the debtor–in–possession's status as a hypothetical judicial lien creditor pursuant to § 544(a)(1). 404 B.R. at 140.  The deed of trust at issue contained an inadvertent scrivener's error that caused the legal description of the real property to incorrectly encumber a lot different from the one intended. Id. at 138.  The court found that the deed of trust, as written, was invalid under North Carolina law for failing to provide a sufficient description of the encumbered property. Id.  The court recognized that the creditor's reformation rights were abolished "as of the petition date because Section 544(a)(1) assumes that the debtor–in–possession is a judicial lien creditor that . . . has no knowledge of the mistake and incurred new liability on the petition date." Id. at 140.[7]

---

[7] In reaching this conclusion, the court distinguished Hartman Paving on the grounds that it only prevents invalidation of a deed of trust by § 544(a)(3) as a bona fide purchaser for value where the debtor–in–possession "was a party to the original transaction and had actual notice of the transaction and the recording of the deed of trust . . . ." Law Developers, 404 B.R. at 139.

The court, having found the Chapel Ridge Deed of Trust avoidable under § 544(a)(1), concludes that the defendant's reformation rights were abolished as of the petition date. Because reformation is not permitted in this case, the Chapel Ridge Deed of Trust remains invalid for failing to properly identify the promissory note as the obligation it purports to secure. The trustee's status as a hypothetical judicial lien creditor under § 544(a)(1) prevents reformation of the Chapel Ridge Deed of Trust and, as a result, the trustee may avoid the defendant's lien in the Chapel Ridge Property as a matter of law.[8]

## CONCLUSION

Based on the foregoing, there is no genuine issue of material fact precluding entry of summary judgment in favor of the trustee. As a matter of law, the Chapel Ridge Deed of Trust is invalid and does not secure the Chapel Ridge Property because it fails to properly describe or identify the promissory note as the obligation secured. Furthermore, the trustee may rely on § 544(a)(1) to assert that rights of a hypothetical judicial lien creditor to prevent reformation of the Chapel Ridge Deed of Trust. Accordingly, summary judgment is **ALLOWED** in favor of the trustee and he may avoid the Chapel Ridge Deed of Trust pursuant to § 544(a)(1).

**SO ORDERED.**

**END OF DOCUMENT**

---

[8] Based on the determination that the Chapel Ridge Deed of Trust fails to properly identify the promissory note as the obligation secured and the trustee's status as a hypothetical lien creditor under § 544(a)(1) prevents reformation in this instance to correct the insufficient description, the court need not address whether the postpetition reformation contemplated by the defendant violates the automatic stay under § 362(a).